# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THE SALVATION ARMY, BARRY J. SALLINGER, AND CYPRESS STREET PROPERTIES, LLC | CIVIL ACTION NO.  6:16-cv-00347 |
| | JUDGE S. MAURICE HICKS |
| VERSUS | |
| | MAGISTRATE JUDGE CAROL B. WHITEHURST |
| UNION PACIFIC RAILROAD COMPANY, CONSOLIDATED COMPANIES, INC., AND SOUTHERN PACIFIC MOTOR TRUCKING COMPANY | |

## OPPOSITION TO MOTION TO REMAND

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

I.    FEDERAL QUESTION JURISDICTION EXISTS OVER THIS CASE ................... 2

      A.    BACKGROUND .................................................................. 2

      B.    42 U.S.C. § 9267 PROVIDES AN EXCLUSIVELY FEDERAL
            QUESTION FOR THE ADJUDICATION OF ISE ACTIONS, AND
            THUS COMPLETELY PREEMPTS PLAINTIFFS' STATE LAW
            CLAIMS BECAUSE THOSE CLAIMS ASSERT THE ELEMENTS
            OF AN ISE ACTION .............................................................. 3

            1.    Basic Precepts of Complete Preemption ................................. 4

            2.    Plaintiffs Assert an ISE Action ........................................... 7

            3.    The *Taylor* Inquiry: Congress Intended to Establish an
                  Exclusive Federal Forum for ISE Actions, and Claims Within
                  the Scope of an ISE Action are Completely Preempted ................. 9

            4.    The *Davila* Inquiry – Claims in Plaintiffs' Petition Fall
                  "Within the Scope" of an ISE Action, and thus the Case Was
                  Property Removed to This Court. ........................................ 11

      C.    REMOVAL WAS ALSO PROPER UNDER THE "INTRINSIC AND
            CENTRAL" TEST .............................................................. 14

II.   CONCO IS IMPROPERLY JOINED ................................................ 15

      A.    THE STANDARD FOR IMPROPER JOINDER .............................. 16

      B.    THE PETITION'S NEIGHBORHOOD AND TORT CLAIMS ARE
            PRESCRIBED ON THEIR FACE ............................................ 16

            1.    The Petition is Prescribed on Its Face ................................. 17

            2.    This Court May Authorize Jurisdictional Discovery to Pierce
                  the Pleadings ............................................................ 21

      C.    PLAINTIFFS HAVE NO CAUSE OF ACTION FOR UNJUST
            ENRICHMENT ................................................................ 22

      D.    THE *SMALLWOOD II* DOCTRINE HAS NO EFFECT ON THIS
            CASE ............................................................................ 23

III.  CONCLUSION ...................................................................... 24

i

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Aaron v. National Union Fire Ins. Co. of Pittsburgh,*
  876 F.2d 1157 (5th Cir. 1989) .................................................................4

*ABA International v. Citicorp USA,*
  1988 WL 30637 (S.D. Tex. March 25, 1988).........................................7

*Aetna Health, Inc. v. Davila,*
  542 U.S. 200 (2004)........................................................... passim

*Aquafaith Shipping, Ltd. v. Jarillas,*
  963 F.2d 806 (5th Cir. 1992) .................................................................4

*Arana v. Ochsner Health Plan,*
  338 F.3d 433 (5th Cir. 2003) (*en banc*) .............................................6

*Badon v. RJR Nabisco, Inc.,*
  236 F. 3d 282 (5th Cir. 2000) .............................................................16

*Beneficial Nat. Bank v. Anderson,*
  539 U.S. 1 (2003)...................................................................................6

*Blue Circle Cement, Inc. v. Bd. of Cnty Com'rs of Cnty of Rogers,*
  27 F.3d 1499 (10th Cir. 1994) ............................................................11

*Board of Com'rs of Southeast Louisiana Flood Protection Authority-East v. Tennessee*
  *Gas Pipeline Co., LLC,* 88 F. Supp. 3d 615 €.D. La. 2015) ...................14

*Boone v. Citigroup, Inc.,*
  416 F.3d 382 (5th Cir. 2005) ..............................................................23

*Boyes v. Shell Oil Prod.,*
  199 F.3d 1260 (11th Cir. 2000) ..........................................................11

*Brumfield v. City of Baker,*
  2011 WL 5178267 (M.D. La. Sept. 30, 2011), *report & recommendation adopted,*
  2011 WL 5238720 (M.D., La. 10/31/2011)..........................................15

*Bullard v. Southwest Crop Ins. Agency, Inc.,*
  984 F.Supp. 531 (E.D. Tex. 1997)........................................................9

*Carter v. Matrixx Initiatives, Inc.,*
  391 F. App'x 343 (5th Cir. 2010) .......................................................18

*Central West Virginia Regional Airport Authority,*
    2016 WL 685086 (S.D. W.V. 2/18/16)..............................................................5, 7

*Chaverri v. Dole Food Co. Inc.,*
    546 F. App'x 409 (5th Cir. 2013) ..........................................................................19

*Citizens Coal Cncl v. Matt Canestrale Cont., Inc.,*
    51 F.Supp.3d 593, 603 (W.D. Pa. 2014)..................................................................8

*Constance v. Austral Oil Exploration Co., Inc.,*
    2013 WL 6578178 (W.D. La. 12/13/13)................................................................23

*Cox v. City of Dallas, Tex.,*
    256 F.3d 281 (5th Cir. 2001) ..................................................................................8

*Daigle v. McCarthy,*
    444 F. Supp. 2d 705 (W.D. La. 2006), *aff'd,* 238 F. App'x 1 (5th Cir. 2007)........19

*Dardeau v. W. Orange–Grove Consolidated Indep. Sch. Dist.,*
    43 F.Supp.2d 722 (E.D. Tex. 1999)..................................................................14, 15

*Elam v. Kansas City S. Ry. Co.,*
    635 F.3d 796 (5th Cir. 2011) ................................................................................4, 5

*Eldredge v. Martin Marietta Corp.,*
    207 F.3d 737 (5th Cir. 2000) ................................................................................19

*Firefighters' Ret. Sys. v. Royal Bank of Scotland PLC,*
    2016 WL 1254366 (M.D. La. Mar. 29, 2016) ......................................................21

*Frank C. Minvielle, L.L.C. v. IMC Glob. Operations, Inc.,*
    380 F.Supp.2d 755 (W.D. La. 2004).....................................................................19

*Furrer v. Brown,*
    62 F.3d 1092 (8th Cir. 1995) ................................................................................10

*Garcia v. LG Elecs. USA Inc.,*
    2011 WL 2517141 (S.D. Tex. June 23, 2011)......................................................21

*Geddes v. American Airlines, Inc.,*
    321 F.3d 1349 (11th Cir. 2003) ..............................................................................5

*Gemcraft Homes, Inc. v. Sumurdy,*
    688 F.Supp. 289 (E.D. Tex. 1988)..........................................................................7

*Griggs v. State Farm Lloyds,*
    181 F. 3d 694 (5th Cir. 1999) ...............................................................................16

iii

*Hernandez v. Smith*,
  2015 WL 9921067 (W.D. La. Sept. 28, 2015)................................................................19, 21

*Hill v. Exxon Mobil Corp.*,
  2012 WL 6606960 (E.D. La. Dec. 18, 2012).........................................................................19

*In re FEMA Trailer Formaldehyde Products Liab. Litig.*,
  2009 WL 2914242 (E.D. La. Sept. 2, 2009)..........................................................................19

*Ins. Servs. Const. Corp. v. Geheb Properties, LLC*,
  2012 WL 27478 (W.D. La. Jan. 3, 2012) .............................................................................20

*Jones v. Tidewater Inc.*,
  2014 WL 4955473 (E.D. La. Oct. 2, 2014) ..........................................................................19

*K-7 Enterprises, LP v. Jester*,
  562 F.Supp.2d 819 (E.D. Tex. 2007)....................................................................................10

*Kling Realty Co. v. Chevron USA, Inc.*,
  575 F.3d 510 (5th Cir. 2009) ......................................................................18, 20, 21, 24

*Litgo New Jersey, Inc. v. Commissioner New Jersey Dep't of Environmental Protection*,
  725 F.3d 369 (3rd Cir. 2013) ...............................................................................................10

*McKee v. Kansas City S. Ry. Co.*,
  358 F.3d 329 (5th Cir. 2004) ........................................................................................17, 21

*Memorial Hermann Hospital System v. Aetna Health, Inc.*,
  2011 WL 3703770 (S.D. Tex. Aug. 23, 2011) .......................................................................5

*Metropolitan Life Ins. Co. v. Taylor*,
  481 U.S. 58 (1987)...................................................................................................... passim

*Middlesex Cnty Bd. of Chosen Freeholders v. State of New Jersey, Department of
  Environmental Protection*,
  645 F.Supp. 715 (D. N.J. 1986) ...........................................................................................10

*Mitchell v. Shaw Power Servs., LLC*,
  2015 WL 3683284 (M.D. La. June 12, 2015)........................................................................19

*Morgan v. Chase Home Fin., LLC*,
  306 F. App'x 49 (5th Cir. 2008) ...........................................................................................16

*Omega Hosp., LLC v. Aetna Life Ins. Co.*,
  2008 WL 4724294 (E.D. La. 2008) ......................................................................................11

*Patel v. Sea Nine Assoc., Inc.*,
  2014 WL 1976882 (N.D. Tex. May 15, 2014) .....................................................................11

iv

*Postley v. Gen. Motors,*
    481 F. App'x 882 (5th Cir. 2012) ...................................................................18

*Reese v. ICF Emergency Mgmt. Servs., Inc., L.L.C.,*
    684 F.Supp.2d 793 (M.D. La. 2010).............................................................23

*Retail Property Trust v. United Brotherhood of Carpenters and Joiners of America,*
    768 F.3d 939 (9th Cir. 2014) ..................................................................4, 5

*Rosciszewski v. Arete Associates, Inc.,*
    1 F.3d 225 (4th Cir. 1993) .........................................................................7

*Sam L. Majors Jewelers v. ABX, Inc.,*
    117 F.3d 922 (5th Cir. 1997) ......................................................................7

*Scott v. R.J. Reynolds Tobacco Co.,*
    2001 WL 797992 (E.D. La. July 12, 2001) ..................................................22

*Sinegal v. Baker Hughes Oilfield Operations, Inc.,*
    2006 WL 15403 (W.D. La. Jan. 4, 2006) .....................................................19

*Smallwood v. Illinois Cent. R. Co.,*
    385 F. 3d 568 (5th Cir. 2004) *(en banc), cert denied* 544 U.S. 992 (2005)............23

*Spear Marketing, Inc. v. BancorpSouth Bank,*
    791 F.3d 586 (5th Cir. 2015) ......................................................................7

*Stewart-Sterling One, LLC v. Tricon Global Restaurants, Inc.,*
    2002 WL 1837844 (E.D. La. 2002) ...........................................................10

*Terrebonne Par. Sch. Bd. v. Columbia Gulf Transmission Co.,*
    290 F.3d 303 (5th Cir. 2002) ...............................................................20, 21

*Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.,*
    310 F.3d 870 (5th Cir. 2002) ....................................................................19

*Travis v. Irby,*
    326 F.3d 644 (5th Cir. 2003) ...............................................................15, 16

*United States v. Marine Shale Processors,*
    81 F.3d 1361 (5th Cir. 1996) ....................................................................12

*United States v. Price,*
    688 F.2d 204 (3rd Cir. 1982) ......................................................................8

*Walker v. Philip Morris, Inc.,*
    2003 WL 21914056 (E.D. La. Aug. 8, 2003) ...............................................22

v

## LOUISIANA STATE CASES

*A to Z Paper Co., Inc. v. Carlo Ditta, Inc.,*
    1999-1189 (La. App. 4 Cir. 10/4/00), 775 So. 2d 42 ............................................... 13

*Adams v. Grigsby,*
    152 So. 2d 619 (La. App. 2 Cir. 1963, *writ ref'd,* 153 So. 2d 880 (La. 1963) ) ..................... 12

*Barr v. Smith,*
    598 So. 2d 438 (La. App. 2 Cir. 1992) ................................................................. 13

*Barrett v. T.L. James & Co.,*
    28,170 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1186 .................................................. 13

*Bernard v. City of Marksville,*
    2014-730 (La. App. 3 Cir. 12/17/14), 154 So. 3d 1246 ...................................... 19, 21

*Bustamento v. Tucker,*
    607 So. 2d 532 (La. 1992) ............................................................................... 24

*Day v. Warren,*
    524 So. 2d 1383 (La. App. 1 Cir. 1988) .............................................................. 13

*Hernandez v. Richard,*
    2000-471 (La. App. 3 Cir. 12/6/00), 772 So. 2d 994 .............................................. 13

*Hogg v. Chevron USA, Inc.,*
    2009-2632 (La. 7/6/10), 45 So. 3d 991 ................................................ 16, 18, 19, 20

*Marin v. Exxon Mobil Corp.,*
    2009-2368 (La. 10/19/10), 48 So. 3d 234 ............................................ 17, 19, 20, 21

*Norfolk Southern Corp. v. California Union Ins. Co.,*
    2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, *writ denied,* 2003-2742 (La.
    12/19/03), 861 So. 2d 57 ................................................................................. 12

*Parish of East Feliciana ex rel. East Feliciana Parish Police Jury,*
    2004-1197 (La. App. 1 Cir. 8/10/05), 923 So. 2d 45 .............................................. 13

*Robichaux v. Huppenbauer,*
    245 So. 2d 385 (La. 1971) ............................................................................... 13

*Robichaux v. State ex rel. Dept. of Health and Hospitals,*
    2006-0437 (La. App. 1 Cir. 12/28/06), 952 So. 2d 27 ............................................ 12

*Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury,*
    371 So. 2d 1127 (La. 1979) ............................................................................. 12

*Thomas v. A. Wilbert & Sons, L.L.C.,*
    2008-0959 (La. App. 1 Cir. 5/8/09), 2009 WL 1272358 .........................................................12

*Walters v. MedSouth Record Mgmt.,*
    LLC, 2010-0352 (La. 6/4/10), 38 So. 3d 241 ...........................................................23

**FEDERAL STATUTES**

12 U.S.C. § 632 .....................................................................................................................7

28 U.S.C. § 1338(a) ..............................................................................................................7

28 U.S.C. § 1332 ................................................................................................................16

42 U.S.C. § 6972(a) ........................................................................................................9, 10

42 U.S.C. § 6972(a)(1) .........................................................................................................9

42 U.S.C. § 6972(a)(1)(A) .................................................................................................10

42 U.S.C. § 6972(a)(1)(B) ....................................................................................2, 7, 10, 24

42 U.S.C. § 6972(f) ..............................................................................................................3

42 U.S.C. § 9267 ..................................................................................................................3

ERISA § 502 .........................................................................................................................6

ERISA § 502(a) .................................................................................................................5, 6

ERISA § 502(a)(1)(B) .......................................................................................................5, 6

**OTHER STATUTES**

La. Civ. Code Article 667 ..................................................................................................13

La. Civ. Code Articles 667-669 ..............................................................................11, 16, 24

La. Civ. Code Articles 3492 ...............................................................................................17

La. Civ. Code Article 3493 ......................................................................................17, 19, 21

La. Rev. Stat. § 30:2015.1 ........................................................................................11, 12, 17

La. Rev. Stat. § 30:2015.1(I) .........................................................................................12, 17

**RULES**

Local Rule 7.5 .......................................................................................................................2

PD.19343629.2

**MAY IT PLEASE THE COURT:**

Union Pacific Railroad Company ("Union Pacific") and Southern Pacific Motor Trucking Company ("Southern Pacific") (collectively "Defendants") respectfully submit this Memorandum in Opposition to the Motion to Remand, R. Doc. 16 and attachments thereto ("the Motion to Remand") filed by plaintiffs The Salvation Army, Barry J. Sallinger, Cypress Street Properties, LLC, Edward P. Mouton, Wayne J. Gary, Gary's Grocery & Market, Inc., DE & FK LLC, and Frank's House, LLC (collectively "Plaintiffs").

Per Local Rule 7.5, Defendants oppose the Motion to Remand. A federal question exists because Plaintiffs pled the elements of an action under 42 U.S.C. § 6972(a)(1)(B), federal law completely preempts this action, and because federal law is otherwise intrinsic and central to Plaintiffs' petition (the "Petition"). On the improper joinder issue, Plaintiffs have no reasonable possibility of recovery against non-diverse Consolidated Companies, Inc. ("ConCo") because Plaintiffs' tort-based claims have prescribed on the face of the Petition and Plaintiffs possess no unjust enrichment claim. The "*Smallwood II*" doctrine does not apply in this matter.

## I.   FEDERAL QUESTION JURISDICTION EXISTS OVER THIS CASE

### A.   Background

Defendants have removed this lawsuit based upon, *inter alia*, the proposition that Plaintiffs have asserted a federal action under 42 U.S.C. § 6972(a)(1)(B) (an imminent and substantial endangerment or "ISE Action"), which provides:

> [A]ny person may commence a civil action on his own behalf . . . against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."[1]

---

[1] Doc. No. 1, p.5-6.

Plaintiffs strenuously disavow any federal cause of action. Their disavowal, however, is undone by the "artful pleading" doctrine, which applies here because: (1) federal law has completely preempted the state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not pleaded in the plaintiff's complaint, is nonetheless both "intrinsic and central" to the plaintiff's cause of action.[2] Plaintiffs have "artfully pled" an ISE Action. Federal jurisdiction exists,[3] Plaintiffs' disclaimers aside.

Plaintiffs contend that removal under the "artful pleading" doctrine requires a showing of "complete preemption," that the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* contains a savings clause (42 U.S.C. § 6972(f)) which preserves state law causes of action from preemption under RCRA, and as such there is no "complete preemption" under RCRA.[4] Plaintiffs also argue that removal is improper under the "intrinsic and central" test because this test is not used by courts in the Fifth Circuit.[5]  Plaintiffs also assert that they have ample causes of action under state law to compel the testing and remediation of property they do not own, and thus they have no need to assert an ISE Action to obtain such relief.[6] While "complete preemption" is pertinent and while RCRA does contain a savings clause, Plaintiffs' proffered conclusion as to that concept and that provision are, as explained below, incorrect.

**B.     42 U.S.C. § 9267 Provides an Exclusively Federal Question For the Adjudication of ISE Actions, and Thus Completely Preempts Plaintiffs' State Law Claims Because Those Claims Assert the Elements of an ISE Action**

---

[2] Doc. No. 1, p.5.
[3] Doc. No. 1, p.5-6.
[4] Motion to Remand, pp.9-11.
[5] Motion to Remand, pp.6, 11.
[6] Motion to Remand, pp.12-15.

### 1.    Basic Precepts of Complete Preemption

"A plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist."[7] Here, however, the Court and the issue of remand are not confined to Plaintiffs' characterization of the Petition. Under the "artful pleading" doctrine, a reviewing court will not permit a plaintiff to defeat removal by characterizing claims that are essentially federal in character as state law claims.[8] In such cases, the court may find that the plaintiff's claims arise under federal law—even though the plaintiff has not characterized them as federal claims—because federal law has completely preempted the claim being asserted.[9] That is exactly the situation presented here.   This conclusion follows from two "complete preemption" rulings by the United States Supreme Court: (1) *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987) and (2) *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004). These decisions are discussed in detail and applied in Sections 2 and 3, below.   They are mentioned here in preface.

Plaintiffs assert that the RCRA savings clause, which preserves state law causes of action, means that that "complete preemption" cannot exist under the RCRA's civil remedy provision. The problem with that assertion is that Plaintiffs confuse "complete" preemption with "ordinary" or "defensive" preemption used to determine when federal law eclipses state law causes of action. "Defensive preemption" exists when a federal law expressly preempts state law, "occupies the field" so that state law remedies cannot lie, or directly conflicts with federal law.[10] This is not a "defensive preemption" case. "Complete preemption" is a jurisdictional doctrine

---

[7] *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).
[8] *Aaron v. National Union Fire Ins. Co. of Pittsburgh*, 876 F.2d 1157, 1161 (5th Cir. 1989).
[9] *Aquafaith Shipping, Ltd. v. Jarillas*, 963 F.2d 806, 808 (5th Cir. 1992).
[10] *Retail Property Trust v. United Brotherhood of Carpenters and Joiners of America*, 768 F.3d 939, 949 (9th Cir. 2014) ("In general, there are three forms of defensive preemption: express preemption, field preemption, and conflict preemption.").

4

that applies when it is the intent of Congress that certain classes of claims be resolved in an exclusively federal forum.[11] This is a complete preemption case.

The pertinent question is whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under state law.[12] "Put another way, in complete preemption cases, federal law so transforms the substantive area that any complaint alleging facts that come within the statute's scope necessarily 'arises under' federal law, even if the plaintiff pleads a state law claim only."[13] The answer here is that certain of Plaintiffs' claims (those for assessment and remediation of the "Facility") necessarily arise under federal law.

The leading Supreme Court case on the doctrine of complete preemption is *Metropolitan Life Ins. Co. v. Taylor*.[14] In *Taylor*, the court of appeal had held that the mere assertion that state law causes of action might be preempted under ERISA was not a basis for removal. The Supreme Court reversed, observing that while the court of appeals was correct as regards "defensive preemption," federal jurisdiction was established by the complete preemption of all state law causes of action falling "within the scope" of ERISA's civil remedy provision, ERISA § 502(a).[15] The Court observed that Congress had provided exclusive jurisdiction in the federal courts for the species of claims addressed by ERISA § 502(a), and concluded that in doing so

---

[11] *Elam*, 635 F.3d at 803 ("Complete preemption must be distinguished from "defensive preemption" (i.e., "conflict preemption" or "ordinary preemption"). Defensive preemption does not create federal jurisdiction and simply "declares the primacy of federal law, regardless of the forum or the claim.") (parentheses in original) (citations omitted); *accord, Retail Property Trust*, 768 F.3d at 946-49; *Geddes v. American Airlines, Inc.*, 321 F.3d 1349, 1352-53 (11th Cir. 2003).

[12] *Elam*, 635 F.3d at 803; *Memorial Hermann Hospital System v. Aetna Health, Inc.*, 2011 WL 3703770, *2 (S.D. Tex. Aug. 23, 2011) ("When a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be removed. This is because such allegations are based on federal law even when pleaded in terms of state law.") (quotations and citations omitted).

[13] *Central West Virginia Regional Airport Authority*, 2016 WL 685086, *5 (S.D. W.V. 2/18/16) (quoting 15-103 Moore's Federal Practice - Civil § 103.45).

[14] 481 U.S. 58 (1987).

[15] The provision at issue in *Taylor* was Section 502(a)(1)(B), which provides that

"A civil action may be brought(1) by a participant or beneficiary-
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

5

"Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court."[16]

The Supreme Court revisited the complete preemption doctrine (in the context of ERISA § 502(a)) in *Aetna Health, Inc. v. Davila*.[17] The issue in *Davila* was whether the plaintiffs' claims fell "within the scope" of ERISA § 502(a) (and thus were completely preempted under *Taylor*). The Court ruled: "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)."[18] The Court found that in the case before it, the court of appeal—the Fifth Circuit—erred by relying upon the labels plaintiffs affixed to their claims (tort rather than ERISA contract claims), and by relying upon the fact that state law provided for remedies in addition to those provided by ERISA § 502.[19] Because the facts asserted in the petition concerned a beneficiary's attempt to enforce the terms of an ERISA plan, it "fell within the scope" of the plan.[20] The fact that state law provided additional duties did not vary this analysis where the substance of the state claim required the adjudication of a claim falling within the scope of ERISA § 502; there, state law duties were not "independent" of the federal claim.[21]

*Taylor* establishes several principles which apply with full force in this case. First, "[t]he doctrine of complete preemption appears to be justified by the view that, in creating an exclusive

---

[16] *Taylor*, 481 U.S. at 65-66. As previously noted, the federal courts have had much difficulty in distinguishing between "defensive preemption," which preempts causes of action, with "complete preemption," which established federal question jurisdiction. For instance, more than a decade after *Taylor*, the Fifth Circuit was forced to clarify that removal jurisdiction existed if a cause of action fell within the section of ERISA § 502(a), without regard to any showing of whether the state cause of action was defensively preempted by ERISA. *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (*en banc*).

[17] 542 U.S. 200 (2004); *also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003) (finding complete preemption of claims falling within scope of civil remedy provision of National Bank Act).

[18] *Id.* at 210.

[19] *Id.* at 214-15.

[20] *Id.* at 211.

[21] *Id.* at 212-13.

cause of action, Congress intends to allow removal of competing state-law claims."[22] Thus, "'complete preemption' occurs only when Congress intends not merely to preempt a certain amount of state law, but also intends to transfer jurisdiction of the subject matter from state to federal courts."[23] For these reasons, the existence of exclusive federal jurisdiction over a class of claims strongly militates in favor of a finding of "complete preemption" as to such claims.[24] Finally, if only one of a plaintiff's claims is "completely preempted," the entire case may be removed.[25] As shown below, these precedents apply in full to Plaintiffs' action.

### 2.       Plaintiffs Assert an ISE Action

Comparing the statutory basis of an ISE Action to Plaintiffs' Petition demonstrates that Plaintiffs allege an ISE claim.  The pertinent statutory language is as follows:

> (a) Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

> (1)(B) against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . .[26]

---

[22] *Central West Virginia Regional Airport Authority*, 2016 WL 685086, *3 (discussing *Taylor*).
[23] *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925 (5th Cir. 1997) (citing *Taylor,* 481 U.S. at 65-66).
[24] *Taylor*, 481 U.S. at 65-66; *see also Rosciszewski v. Arete Associates, Inc.*, 1 F.3d 225, 232 (4th Cir. 1993) ("Thus, although Congress did not use language virtually identical to that contained in the jurisdictional provisions governing suits under the LMRA or ERISA, we view the grant of exclusive original jurisdiction over copyright claims to the district courts as strong evidence that Congress intended copyright litigation to take place in federal courts."); *Gemcraft Homes, Inc. v. Sumurdy*, 688 F.Supp. 289, 294 (E.D. Tex. 1988) ("Congress clearly expressed the intent that issues arising under the Copyright Act be resolved solely in federal courts by granting those courts exclusive jurisdiction over all civil actions arising under any Act of Congress relating to copyrights. 28 U.S.C. § 1338(a). Exclusive federal jurisdiction, a comprehensive scheme of remedies and the express intent of Congress to act pre-emptively support the application of the complete pre-emption doctrine to state law causes of action pre-empted by section 301."); *ABA International v. Citicorp USA*, 1988 WL 30637, * (S.D. Tex. March 25, 1988) (The court finds that the complete preemption doctrine applies. Federal jurisdiction is exclusive over suits involving international or foreign banking where at least one part is a United States corporation. 12 U.S.C. § 632. Because this case is a dispute over a foreign banking transaction and Citicorp is a United States corporation, the complaint will be considered to present a federal question.").
[25] *Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015) ("If any claim is preempted, however, the entire action may be removed.").
[26] 42 U.S.C. § 6972(a)(1)(B).

PD.19343629.2

An ISE Action requires proof "(1) that the defendant is a person, including, but not limited to, one who was or is a generator or transporter of solid or hazardous waste or one who was or is an owner or operator of a solid or hazardous waste treatment, storage, or disposal facility; (2) that the defendant has contributed to or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste; and (3) that the solid or hazardous waste may present an imminent and substantial endangerment to health or the environment."[27]   A district court has the "authority to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic wastes."[28]

Plaintiffs allege that Defendants currently own, lease, or operate on, or previously owned, leased or operated on, a "Facility" where a "toxic stew of 'Superfund' hazardous substances,"[29] i.e., "hazardous waste,"[30] can be found, and that Defendants have engaged in waste disposal practices that contributed to this "contamination."[31]   Plaintiffs also allege that Defendants' operations "caused and contributed to the contamination at and under the Facility."[32]   Plaintiffs also allege that the "[d]ocumented contamination at the Facility constitutes an illegal, imminent, and substantial endangerment to Plaintiffs' and the entire Lafayette community's health and safety," and that the remediation of such contamination is necessary "to protect the entire

---

[27] Cox v. City of Dallas, Tex., 256 F.3d 281, 292–93 (5th Cir. 2001) (internal citations and footnote omitted); see also Citizens Coal Cncl v. Matt Canestrale Cont., Inc., 51 F.Supp.3d 593, 603 (W.D. Pa. 2014) (listing cases). A person "contributes to" the handling, storage, treatment, transportation, or disposal of hazardous waste when that person has a share in or effect upon such conduct. Cox, 256 F.3d at 294-95.
[28] United States v. Price, 688 F.2d 204, 214 (3rd Cir. 1982).
[29] Petition, ¶ 26.
[30] "Hazardous waste" is a subset of "solid waste" and is defined under RCRA as any "solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may- (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health, or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."
[31] Petition, ¶¶ 4, 5, 6, 9, 10; see also ¶ 23 (detailing multiple distinct tracts, but concluding that "all of these 'sites' are contiguous parcels of property that comprise the single Facility and contamination source for purposes of this Petition and of the threat to the Lafayette drinking-water supply.").
[32] Id. at ¶ 58.

8

Lafayette community."[33]  Due to this asserted threat, Plaintiffs seek an immediate Facility-wide "assessment" and a "meaningful cleanup" of the Facility,[34] and further seek to recover the costs of investigation, assessment, and remediation of the Facility.[35]

These claims are nothing other than an ISE Action.  Plaintiffs allege (1) Defendants are or were "owners" or "operators" of a "facility" where "hazardous waste" was disposed of; (2) Defendants' operations, actions, and inactions "caused and contributed to" the site contamination, and (3) the contamination at the Facility presents "an imminent and substantial endangerment to the health and environment."  Plaintiffs also seek judicial orders compelling assessment and remediation of the Facility: the **same remedies** provided for under RCRA. Under *Taylor* and *Davila*, Plaintiffs' claims are completely preempted.

### 3.   The *Taylor* Inquiry: Congress Intended to Establish an Exclusive Federal Forum for ISE Actions, and Claims Within the Scope of an ISE Action are Completely Preempted

Complete preemption exists under *Taylor* if "Congress has clearly manifested an intent to make causes of action within the scope of [42 U.S.C. § 6972(a)(1)] removable to federal court."[36] As this suggests, "[t]he touchstone of the federal district court's removal jurisdiction by means of the complete preemption defense is congressional intent."[37]

Congress's intent is expressed in the jurisdictional language of 42 U.S.C. § 6972(a), which provides in pertinent part (with emphasis supplied) as follows:

> **Any action under paragraph (a)(1) of this subsection shall be brought in the district court for the district in which** the alleged violation occurred or **the alleged endangerment may occur . . . . The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties . . . .**

---

[33] *Id.* at ¶¶ 4-5.
[34] *Id.* at ¶ 5.
[35] *Id.* at ¶¶ 6, 12. 51.
[36] *Taylor*, 481 U.S. at 65-66.
[37] *Bullard v. Southwest Crop Ins. Agency, Inc.*, 984 F.Supp. 531, 534 (E.D. Tex. 1997) (*citing Taylor*, 481 U.S. at 66).

Section 6972(a) unambiguously directs that "any action under paragraph (a)(1) of this subsection," which includes an ISE Action, "shall be brought in" federal district court. As virtually all federal courts which have examined this statutory language have concluded, it unambiguously confers **exclusive** federal jurisdiction upon ISE Actions.[38]  Indeed, the legislative history specifically reflects that Congress, while not displacing collateral state law remedies, did not want the assertion of state law remedies (in federal court pursuant to pendent jurisdiction) to delay a federal court's resolution of ISE Actions:

> Although the Committee has not prohibited a citizen from raising claims under state law in a section 7002 action, the committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments.[39]

"RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste [and] permits any citizen to file suit in federal district court against any person to enforce the operating and permitting requirements of the regulatory scheme under 42 U.S.C. § 6972(a)(1)(A), or to abate an imminent and substantial endangerment to human health or the environment under 42 U.S.C. § 6972(a)(1)(B)."[40]  Congress intended, as part of this "comprehensive" scheme, that actions "falling within the scope" of an ISE Action (a

---

[38] *Litgo New Jersey, Inc. v. Commissioner New Jersey Dep't of Environmental Protection*, 725 F.3d 369, 394 (3rd Cir. 2013) ("The overwhelming majority of courts that have addressed this issue have read this provision to confer exclusive jurisdiction on federal courts, based on the statute's instruction that RCRA claims 'shall be brought' in a 'district court.'") (listing cases). Although the Fifth Circuit has not yet considered the issue, several courts in the circuit have, and all have joined the "overwhelming majority" of courts in finding exclusive federal jurisdiction over ISE Actions. *K-7 Enterprises, LP v. Jester*, 562 F.Supp.2d 819, (E.D. Tex. 2007) ("Moreover, Title 42 U.S.C. section 6972(a) states that any RCRA citizen suit '*shall* be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur.' Therefore, federal district courts have exclusive jurisdiction over RCRA citizen suits.") (emphasis in original) (citation omitted); *Stewart-Sterling One, LLC v. Tricon Global Restaurants, Inc.*, 2002 WL 1837844, *2 (E.D. La. 2002) ("Exclusive jurisdiction over both types of citizen suits is lodged in the federal district courts.")

[39] H.R.Rep. No. 98–198, 1, 98th Cong., 2nd Sess., pt. 1, at 53 (1984), reprinted in 1984 U.S. Code Cong. & Admin.News 5576, 5612 (relating to Pub.L. 98–616, Title IV, § 401, Nov. 8, 1984, 98 Stat. 3268; amending section 6972); *see Middlesex Cnty Bd. of Chosen Freeholders v. State of New Jersey, Department of Environmental Protection*, 645 F.Supp. 715, 719-20 (D. N.J. 1986) (concluding that "the legislative history for citizen suits under RCRA indicates that Congress did not contemplate that RCRA suits would be resolved in State courts."; *also Furrer v. Brown*, 62 F.3d 1092, 1098 (8th Cir. 1995) (same).

[40] *Stewart-Sterling One*, 2002 WL 1837844, *1 (internal quotation marks and citation omitted).

narrow factual situation involving an imminent threat to public safety) be resolved by recourse to uniform federal standards implemented by the federal judiciary.[41] It is beyond peradventure that Congress, when it established the elements of an ISE Action and provided that *all* actions setting forth these elements would be heard *exclusively* by federal courts, completely preempted state law actions falling within the scope of an ISE Action.

4.     **The *Davila* Inquiry – Claims in Plaintiffs' Petition Fall "Within the Scope" of an ISE Action, and thus the Case Was Property Removed to This Court.**

*Taylor* examines whether "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions [a federal statute] removable to federal court."[42] Here, not only "could have" Plaintiffs brought an ISE Action but—as set forth in Subpart (I)(B)(2) of this Opposition—they did exactly that.

*Davila* builds upon *Taylor* by examining whether there is another independent legal duty "implicated by a defendant's actions."[43] The essential question is whether a cause of action for the assessment and remediation of the "Facility" could have been brought under state law in the absence of RCRA.[44] Plaintiffs claim that an action to require the owner of adjacent property to remediate "Superfund" waste is authorized by existing state law remedies, in particular La. Rev. Stat. 30:2015.1 (the "Groundwater Act") and state "nuisance" law (La. Civ. Code arts. 667-

---

[41] This result is further supported by the fact that while RCRA's saving clause does save some state laws and regulations, any state law or action which is less stringent that RCRA's federal standard or interferes with any federal RCRA goal or remedy is defensively preempted. *Boyes v. Shell Oil Prod.*, 199 F.3d 1260, 1269 (11th Cir. 2000); *Blue Circle Cement, Inc. v. Bd. of Cnty Com'rs of Cnty of Rogers*, 27 F.3d 1499, 1508-09 (10th Cir. 1994). Defendants reserve any claim of defensive preemption.

[42] *Taylor*, 481 U.S. 58, 66.

[43] *Davila*, 542 U.S. at 210; *see also Patel v. Sea Nine Assoc., Inc.*, 2014 WL 1976882, *4 (N.D. Tex. May 15, 2014) ("Accordingly, any state law 'cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy' addresses an area of exclusive federal concern and is subject to complete preemption.").

[44] *Omega Hosp., LLC v. Aetna Life Ins. Co.*, 2008 WL 4724294, *4 (E.D. La. 2008) ("A claim implicates an independent legal duty when the individual may bring the state law claim regardless of the terms of an ERISA plan.") (citing *Davila*).

669).[45]  On this key point, Plaintiffs are wrong.

By its own terms the Groundwater Act does not provide a private "cause of action" for Plaintiffs regarding "their" groundwater.[46]  Rather, the Act establishes a procedure whereby, when contamination of usable groundwater is pleaded in a court case, regulatory authorities can be notified and a regulatory response commenced.[47]  Moreover, that "regulatory response" is one administered by state authorities pursuant to the "cradle-to-grave" regulatory regime established by RCRA; the same regulatory regime which establishes the exclusively federal ISE Action.[48] The Groundwater Act is a purely procedural statute. It is not a source of an "independent legal duty" implicated by Defendants' actions. It does not displace the artfully pled ISE Action.[49]

---

[45] Motion to Remand, pp.12-15.

[46] La. Rev. Stat. § 30:2015.1(I); *Robichaux v. State ex rel. Dept. of Health and Hospitals,* 2006-0437 (La. App. 1 Cir. 12/28/06), 952 So. 2d 27, 41 ("Plaintiffs' cause of action arises under tort principles and not [the Groundwater Act], which Plaintiffs use here in a procedural capacity to comply with proper procedures for seeking remediation."). The authority cited by Plaintiffs, *Robichaux v. State ex rel. Dep't of Health & Hosps.,* 2006-0437 (La. App. 1 Cir. 12/28/06), 952 So. 2d 27 (multiple writ denials), does not contradict this conclusion. Plaintiffs contend, citing *Robichaux,* that "Louisiana courts have found that [t]he Groundwater Act allows for a citizen to obtain evaluation and remediation of off-site property that has impacted or threatens to impact usable groundwater." Motion to Remand, p.15 (citing *Robichaux*). However, Plaintiffs disregard the *Robichaux* court's ruling that "[a]lthough Defendants here argue likely issues for consideration on the merits, these do not defeat the common threads shared by all potential class Plaintiffs: groundwater under their properties has been contaminated by a single chemical; [and] they seek remediation . . ." *Robichaux,* 952 So. 2d at 35 (emphasis supplied). *Robichaux* thus contradicts Plaintiffs' argument. Further, ignoring the fact that the Robichaux case does not support their theory, the decision was made in the context of a (procedural) class certification ruling and, as such, was not a merits (*i.e.* substantive law) ruling. *Thomas v. A. Wilbert & Sons, L.L.C.,* 2008-0959 (La. App. 1 Cir. 5/8/09), 2009 WL 1272358, *6 ("[A] discussion of the merits . . . is not appropriate to a determination of the propriety of class certification.").

[47] *See generally* La. Rev. Stat. § 30:2015.1. This result is consistent with Louisiana property law, which dictates that groundwater is not owned by anyone until it is captured. *Adams v. Grigsby,* 152 So. 2d 619, (La. App. 2 Cir. 1963, *writ ref'd,* 153 So. 2d 880 (La. 1963) ) ("Subterranean waters, by analogy, must be classified with oil and gas as fugitive substances."); *Norfolk Southern Corp. v. California Union Ins. Co.,* 2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 193, *writ denied,* 2003-2742 (La. 12/19/03), 861 So. 2d 57 ("Therefore, it appears that costs expended in connection with efforts to remediate damage to the groundwater, whether it was below Norfolk's property or third-party property, would not be excluded from coverage pursuant to the owned property exclusion because such groundwater is not owned by the insured.").

[48] *United States v. Marine Shale Processors,* 81 F.3d 1361, 1367-68 (5th Cir. 1996) (describing the place of Louisiana's regulatory response to solid and hazardous waste in the RCRA regulatory regime); *Accord, Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury,* 371 So. 2d 1127, 1132-34 (La. 1979).

[49] The state district court judgment Plaintiffs affix to their Motion to Remand (Doc. No. 16-2) is instructive in this regard. That judgment reflects a state district court approving the implementation of a clean-up plan—which includes compliance with RCRA requirements—of a subsurface aquifer which had been previously approved by the United States Environmental Protection Agency and state LDEQ. The judgment does not suggest that the action in that case involved a claim of "substantial and imminent endangerment," "contributing to" liability,

Plaintiffs also argue that they have pled an actionable nuisance (under La. Civ. Code art. 667) which authorizes an injunction requiring Defendants to remediate the "Facility." However, Louisiana law is clear that "the determining factor of an actionable nuisance is whether it causes real damages as opposed to a mere inconvenience."[50] This is demonstrated by a review of the cases Plaintiffs cite, which involve an excavation which caused the plaintiff's property to collapse,[51] a pond which continuously overflowed onto plaintiff's property,[52] the keeping of horses and manure which spawned noxious pests and odors that migrated to plaintiff's property,[53] and similarly offensive conduct. Plaintiffs' Petition, by contrast, offers no suggestion of any similar impact on their own property; rather, what Plaintiffs offer is "the potential migration of pollution from the Defendants' property to the Plaintiffs' properties and into the City of Lafayette's drinking water source, the Chicot Aquifer."[54]

However, in **none** of the cases cited by Plaintiffs, or in any other, has any Louisiana court ever said that a "nuisance" existed in the absence of some physical invasion of the plaintiff's

---

or any other element of an ISE Action; thus, the exclusive jurisdiction of the federal court over (and the consequent complete preemption of) such actions is not implicated by this case. However, the judgment does confirm that (1) the Groundwater Act is a procedural statute which provides judicial oversight of regulatory action, (2) the Groundwater Act applies only to groundwater sources (typically aquifers) and not to surface tracts like the Facility in this case, and (3) the Groundwater Act is part of the "comprehensive," "cradle-to-grave" federal regulatory scheme established by RCRA.

[50] *Hernandez v. Richard*, 2000-471 (La. App. 3 Cir. 12/6/00), 772 So. 2d 994, 997; *Parish of East Feliciana ex rel. East Feliciana Parish Police Jury*, 2004-1197 (La. App. 1 Cir. 8/10/05), 923 So. 2d 45, 51-52; *A to Z Paper Co., Inc. v. Carlo Ditta, Inc.*, 1999-1189 (La. App. 4 Cir. 10/4/00), 775 So. 2d 42, 47; *Barrett v. T.L. James & Co.*, 28,170 (La. App. 2 Cir. 4/3/96), 671 So. 2d 1186, 1190-91.

[51] *Barr v. Smith*, 598 So. 2d 438, 439 (La. App. 2 Cir. 1992) ("In time, as the result of erosion attributable to the leveling work performed at defendant's direction, several trees, a survey marker, and a considerable amount of dirt fell from the plaintiff's property onto defendant's property."); *see* Motion to Remand, p.14.

[52] *Day v. Warren*, 524 So. 2d 1383, 1386 (La. App. 1 Cir. 1988) ("The overflow from the Warrens' oxidation pond is a direct physical invasion of Day's property."); *see* Motion to Remand, p.14.

[53] *Robichaux v. Huppenbauer*, 245 So. 2d 385, 387-88 (La. 1971).

[54] Motion to Remand, p.5.  That Plaintiffs' cannot allege with any certainty that there even has been any impact on their properties is further evidenced by the exhibits to the petition (which Plaintiffs incorporate therein by reference), nearly 500 pages of reports and tests concerning the "Facility."  The only reference to Plaintiffs' property in any of this documentation is found on the last page of the last document, a report by Paul Templet dated February 1, 2016 (shortly before the lawsuit was filed), which says only that "Properties adjacent to the Facility should be tested to determine if soil and/or shallow groundwater contamination has migrated onto those properties."  Plaintiffs make no allegation that such testing has occurred or, if so, what results were obtained.

13

property, or some perceptible manifestation (odors, smoke, pests, etc.) of the "nuisance." Importantly, in every case cited by Plaintiffs, the injunctive relief granted has been tailored towards reducing or eliminating the "nuisance," *i.e.* the physical invasion or other manifestations of the nuisance that reach onto the property of the plaintiff. This is because in Louisiana the law of "nuisance" is inextricably tethered to a plaintiff's rights in his or her own property.[55] Nuisance does not exist (as does an ISE Action) to generally safeguard the public from "imminent and substantial endangerment"[56] due to possible exposure to federally-regulated hazardous waste. The latter is exactly what Plaintiffs allege.

This last point is key: the essence of the Petition is a request that Defendants affirmatively remediate "a toxic stew of 'Superfund' hazardous substances" that Plaintiffs allege currently exists on Defendants' property. No "independent" state law duty is at play here. Instead, the sole basis for any assertion of a "nuisance" is the existence of federally (RCRA) regulated hazardous waste. Plaintiffs assert claims that are "within the scope" of an ISE Action. Congress has directed that federal courts exercise exclusive jurisdiction over ISE Actions, Plaintiffs' petition presents a federal question, and removal was proper under *Taylor* and *Davila*.

## C.   Removal Was Also Proper Under the "Intrinsic and Central" Test[57]

"The rationale behind this category of the cases is that if a plaintiff's claims had been well pleaded the federal question would have appeared on the face of the complaint."[58]

---

[55] *See Board of Com'rs of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co., LLC*, 88 F.Supp.3d 615, 644 (E.D. La. 2015) (observing that "both Louisiana courts and the United States Court of Appeals for the Fifth Circuit appear to agree that the plaintiff must have some interest in an immovable 'near' the defendant proprietor's immovable to recover under Article 667.").

[56] Petition, ¶ 4 (comma omitted).

[57] Plaintiffs' posit that this test is not applied by district courts inside the Fifth Circuit. Motion to Remand, p.10. This is incorrect, as the discussion in this section reveals.

[58] *Dardeau v. W. Orange-Grove Consolidated Indep. Sch. Dist.*, 43 F.Supp.2d 722, 728 (E.D. Tex. 1999) ("Another category of cases where the artful pleading doctrine applies involve attempts by plaintiffs to mask by artfully pleading a federal question that not only is intrinsic to a plaintiff's cause of action, but because of its centrality also constitutes adequate grounds for removal.").

Applying this test, the Middle District of Louisiana held that a federal claim under Section 1983 was not "intrinsic and central" to a state court petition pleading setting forth state law claims of false imprisonment and malicious prosecution because "[t]he state law torts of false arrest, false imprisonment, and malicious prosecution existed long before Section 1983 was enacted, and nothing in the language or history of that legislation suggests that Congress intended that any state claim that could possibly be pled as a federal civil rights claim must be so pled by the plaintiff."[59]   In a similar fashion, the Eastern District of Texas, applying the "intrinsic and central" test, found that the federal Due Process Clause was not "intrinsic and central" to a claim for violation of "due process," since under Texas case law a state action under the Texas Constitution provided a purely state law remedy for such violations.[60]

Here, there is no pre-existing Louisiana law remedy for Plaintiffs' claims seeking assessment and cleanup of the "Facility."  Rather, the only law that provides for such relief—in nearly the identical terms as asserted in the Petition—is RCRA.  This action is exclusively federal.  There is federal question jurisdiction in this case under the "intrinsic and central" test.  On this basis as well, the Motion to Remand should be denied.

## II.     CONCO IS IMPROPERLY JOINED

Plaintiffs have disguised their ISE Action under color of state law.  But remand is not appropriate even if the supposed state law claims are taken at face value. Diversity jurisdiction exists where the amount in controversy is in excess of $75,000 and—despite the presence of a defendant domiciled in the same state as a plaintiff—plaintiff cannot "establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Such is the case here. Plaintiffs, domiciled in Louisiana, have "no possibility of recovery"

---

[59] *See Brumfield v. City of Baker*, 2011 WL 5178267, *3 (M.D. La. Sept. 30, 2011) (internal quotation marks and citations omitted), *report and recommendation adopted*, 2011 WL 5238720 (M.D. La. Oct. 31, 2011).
[60] *Dardeau v. W. Orange–Grove Consolidated Indep. Sch. Dist.*, 43 F.Supp.2d 722, 728, 733-34 (E.D. Tex. 1999).

against the sole non-diverse party, ConCo, in this litigation because (1) Petition Counts "A" through "G" have prescribed as to ConCo and (2) Plaintiffs have no cause of action against ConCo under Petition Count "H." Further, that Plaintiffs have no possibility of recovery against ConCo does not compel "the same result for the nonresident defendant[s]." Plaintiffs' reliance on the Fifth Circuit's decision of *Smallwood II* and its progeny is therefore misplaced. In addition to federal question jurisdiction, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## A.     The Standard for Improper Joinder

"[Improper] joinder can be established" by demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[61] Regarding the "inability" to maintain a claim against the non-diverse defendant, the Fifth Circuit "rejected the notion that any mere theoretical possibility of recovery under local law-no matter how remote or fanciful-suffices to preclude removal." *Morgan v. Chase Home Fin., LLC*, 306 F. App'x 49, 53 (5th Cir. 2008) (quotation omitted) (citing *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)).  In this case, the allegations of the Petition—including Plaintiffs' allegation that they became subjectively aware of this matter's underlying facts just months before suit was filed—demonstrate that Plaintiffs cannot establish a cause of action against ConCo.

## B.     The Petition's Neighborhood and Tort Claims are Prescribed on Their Face

All but one of Plaintiffs' claims are subject to a one-year liberative prescription period. Petition Count "A," ¶¶ 53-57, relies on Louisiana Civil Code articles 667-669 (the "neighborhood" articles), which are subject to a one-year prescriptive period.[62] Petition Counts "B" and "C" (¶¶ 58-65 and 66, respectively) as well as the property custodian liability claims of Counts "E" and "F" (¶¶ 72-76 and ¶¶ 77-84, respectively) arise in tort and are likewise subject to

---

[61] *Travis*, 326 F.3d at 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)).

[62] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1003 n.13 (applying one year prescriptive to case involving "nuisance" property claims.).

a one-year prescriptive period.[63] The punitive damage claim, Count "D" ¶¶ 67-71, is "derivative" of a tort claim with a one-year limitations period.[64]

Count "G" is pled under the Groundwater Act. Petition, ¶¶ 85-88. This statute is a procedural mechanism intended to ensure that funds obtained by private plaintiffs for groundwater testing and remediation are used for that purpose. The statute provides "[t]his Section shall not be interpreted to create any cause of action." La. Rev. Stat. § 30:2015.1(I). In sum, the Groundwater Act is "interpretative, remedial, and procedural"[65] legislation. Nothing in Section 30:2015.1 or its interpretive caselaw affects the one-year prescriptive period applicable to private-party tort claims.

### 1.      The Petition is Prescribed on Its Face

Plaintiffs claim that, notwithstanding the multi-decade scope of their Petition—they "first learned of the possibility of contamination and the factual basis supporting their causes of action less than two months before filing the Petition, well within the one-year prescriptive period." Motion to Remand, p.17 (discussing Petition, ¶ 9). Because, Plaintiffs reason, their allegations must be "accepted as true,"[66] the Court's inquiry "ends with the Petition's clear statement of Plaintiffs' acquisition of knowledge . . . ." Motion to Remand, p.17.   Plaintiffs have their liberative prescription law wrong.

Settled Louisiana law provides that prescription begins to run when a claimant "acquired, or should have acquired" knowledge (*i.e.* constructive knowledge) of the claim. La. Civ. Code art. 3493 ("When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired,

---

[63] La. Civ. Code arts. 3492 and 3493.

[64] *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 256.

[65] La. Rev. Stat. § 30:2015.1, "Editor's Notes, Section 2" ("It is the express intent of the legislature that this Act [is] interpretative, remedial, and procedural and shall be applied both prospectively and retroactively . . . .").

[66] As discussed below, the Court may "pierce the pleadings" to test the validity of a plaintiff's claims in the context of an improper joinder analysis. *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).

knowledge of the damage."). This issue was detailed in *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, where the court held that "[c]onstructive knowledge has been defined . . . as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry."[67] According to *Hogg*, "[i]n assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances."[68] This standard applies even when the person causing the harm is unknown—"a plaintiff is responsible to seek out those whom he believes may be responsible for a specific injury."[69]

Plaintiffs assert that because they allege when they became subjectively aware of their claims, their "causes of action against ConCo have not prescribed on the face of the Petition." Motion to Remand, p.17. This is flat wrong. The Petition is prescribed on its face.

When, as here, "more than a year has elapsed between the time of the **tortious conduct** and the **filing of the tort suit**, the burden shifts to [plaintiffs] to demonstrate prescription was suspended or interrupted." *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009) (emphasis supplied).[70] The law of this Court is in accord. "Once it is shown that more than a year has elapsed between the time of the actionable conduct and the filing of suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, using an exception such as *contra non valentem*." *Hernandez v. Smith*, 2015 WL

---

[67] *Hogg*, 45 So. 3d at 997.
[68] *Id.* at 997-98. *See also Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 517 (5th Cir. 2009) ("When prescription begins to run depends on the reasonableness of Kling/Walet's inaction."); *Carter v. Matrixx Initiatives, Inc.*, 391 F. App'x 343, 345 (5th Cir. 2010) (accord).
[69] *Hogg*, 45 So. 3d at 1001.
[70] *See also Postley v. Gen. Motors*, 481 F. App'x 882, 885 (5th Cir. 2012): "In her complaint, [plaintiff] alleged that the accident that caused her injuries occurred in June 2005. However, [plaintiff] did not file her complaint until June 2008, which was two years after the prescriptive period had ended." *Id.* at 885. As a result, the Fifth Circuit, citing *Kling*, concluded that plaintiff's claims were "facially prescribed." *Id.* at 885 n.2.

9921067, *2 (W.D. La. Sept. 28, 2015).[71] *See also Bernard v. City of Marksville*, 2014-730 (La.

App. 3 Cir. 12/17/14), 154 So. 3d 1246, 1248, in which the Louisiana Third Circuit concluded:

> If the damage complained of is to immovable property, prescription begins to run from the day the owner "acquired, or should have acquired, knowledge of the damage." La.Civ.Code art. 3493. A review of Plaintiffs' petition reveals it asserts the installation of the thirty inch culvert was the operating cause of the alleged injuries and/or damages suffered. The petition, filed on January 27, 2012, asserts this act occurred "approximately five years ago." Thus, Plaintiffs' action is prescribed on the face of the pleadings of the petition.

Following the burden shift described above, the plaintiff must establish an exception to

prescription like the "discovery rule" of *contra non valentem*,[72] which is made a part of Civil

Code article 3493. *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245.

The Fifth Circuit has admonished that *contra non valentem* "is an exceptional remedy which is in

direct contradistinction to [prescription] articles in [the] Civil Code." *Terrebonne Par. Sch. Bd. v.*

---

[71] *Report and recommendation adopted*, 2016 WL 356044 (W.D. La. Jan. 27, 2016) (italics supplied). *See also Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) ("If the defendant proves that one year has passed between the tortious acts and the filing of the lawsuit, then the burden shifts to the plaintiff to prove an exception to prescription."); *Chaverri v. Dole Food Co. Inc.*, 546 F. App'x 409, 414 (5th Cir. 2013) ("On the face of the complaint, Louisiana's one-year prescriptive period has expired. Under Louisiana law, Chaverri had the burden of establishing some rule of suspension, interruption, or other exception to save these facially-prescribed claims."); *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002) ("[O]nce it is shown that more than a year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including but not limited to the doctrine of contra non valentem and the theory of continuing tort."); *Daigle v. McCarthy*, 444 F. Supp. 2d 705, 710 (W.D. La. 2006), *aff'd*, 238 F. App'x 1 (5th Cir. 2007) (accord *Terrebonne*); *In re FEMA Trailer Formaldehyde Products Liab. Litig.*, 2009 WL 2914242, *2 (E.D. La. Sept. 2, 2009) (accord *Terrebonne*); *Jones v. Tidewater Inc.*, 2014 WL 4955473, *3 (E.D. La. Oct. 2, 2014) (subsequent history omitted) (accord *Terrebonne*); *Sinegal v. Baker Hughes Oilfield Operations, Inc.*, 2006 WL 15403, *7 (W.D. La. Jan. 4, 2006) ("A defendant seeking to invoke the defense of prescription bears the initial burden of proving that prescription has occurred; if the defendant shows that the time delay has passed between the tortious act and the filing of a lawsuit, then the burden shifts to plaintiff to prove that an exception to prescription applies."); *Mitchell v. Shaw Power Servs., LLC*, 2015 WL 3683284, *3 (M.D. La. June 12, 2015) (accord *Sinegal*); *Frank C. Minvielle, L.L.C. v. IMC Glob. Operations, Inc.*, 380 F.Supp.2d 755, 763 (W.D. La. 2004) ("Considering that tort claims prescribe one year after the date of the alleged tortious conduct, and that contractual claims prescribe ten years after the alleged breach, the claims arising from defendants' actions on plaintiff's property were prescribed on the face of the petition. Accordingly, the burden to establish an exception to the rule of prescription lies with plaintiff.").

[72] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 998; *Hill v. Exxon Mobil Corp.*, 2012 WL 6606960, *2 (E.D. La. Dec. 18, 2012) ("Hill incorrectly contends that because he pleaded that an exception to prescription applies, namely, *contra non valentem*, his claims are not facially prescribed. But courts analyze prescription in two discrete inquiries. [First,] Courts determine if the plaintiff's claims are facially prescribed. Second, if they are facially prescribed, the burden shifts to plaintiff to show that an exception to prescription applies.") (citation omitted).

*Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 n.61 (5th Cir. 2002) (formatting omitted).[73]

Further, as this Court has observed, "Louisiana courts are clear that mere unawareness of a

potential cause of action is not enough to invoke *contra non valentem*."[74]

Here, Plaintiffs make discrete assertions regarding ConCo's activities near their

respective properties:

> The Facility also consists of the former ConCo Food Distributors site, which had
> an underground storage system for storage of diesel, and which was the object of
> an LDEQ enforcement action but which has never been properly cleaned up. This
> property was owned by ConCo during Plaintiffs' ownership of their property
> until, upon information and belief, ConCo sold its property as a part of a secret
> and illegal "under seal" settlement of lawsuits against Defendant Union Pacific
> pending during the years 2003-2011.

Petition, ¶ 20.   For purposes of prescription, the most critical statement contained in this

allegation regards ConCo's sale of the ConCo Food Distributors site ("the ConCo Site") to

Union Pacific no later than 2011.  As the Fifth Circuit held in *Kling*, even "[w]hen the damaging

conduct continues, prescription runs from the date of the **last harmful act**." *Kling Realty Co. v.

Chevron USA, Inc.*, 575 F.3d 510, 518 (5th Cir. 2009) (emphasis supplied) (citing *Bustamento v.

Tucker*, 607 So. 2d 532, 542 (La. 1992)).  Further, "the breach of a duty to right an initial wrong

simply cannot be a continuing wrong that suspends the running of prescription."   *Hogg v.

Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1007.

Because (1) the Petition states that ConCo's relevant conduct ceased, at latest, in 2011

when it divested itself of its interest in the ConCo Site in favor of Union Pacific, (2) allegations

of un-remediated contaminants are insufficient to suspend liberative prescription,[75] and (3) the

---

[73] *See also Marin*, 48 So. 3d at 245, holding *contra non valentem* applies only under "exceptional circumstances."
[74] *Ins. Servs. Const. Corp. v. Geheb Properties, LLC*, 2012 WL 27478, *5 (W.D. La. Jan. 3, 2012) (quotations omitted) (emphasis supplied).
[75] *Hogg v. Chevron USA, Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 1007.

fact that suit was not filed until 2015, Plaintiffs' claims vis-à-vis ConCo are facially prescribed.[76] As a result, the burden rests with Plaintiffs to demonstrate the existence of "exceptional circumstances,"[77] in "direct contradistinction"[78] to the Civil Code article 3493, that they could not have reasonably known of the alleged contamination. But they have failed to engage on this issue. Instead, they rely on a defective theory that their claimed recent enlightenment about decades of well-known environmental issues in their city takes the place of legally adequate allegations. This cannot be repaired by argument in a legal memorandum—even if the argument were correct, which it is not.

## 2.     This Court May Authorize Jurisdictional Discovery to Pierce the Pleadings

The Petition's claims against ConCo are facially prescribed. Plaintiffs have not offered allegation or evidence to demonstrate exceptional circumstances to satisfy their burden that prescription was suspended.  Because of this lack of evidence, Plaintiffs have no possibility of recovery against ConCo under Petition Counts "A" through "G."

Should the Court seek further exploration of this issue, it may allow for jurisdictional discovery. Federal district courts are afforded broad discretion to allow for jurisdictional discovery,[79] including "limited discovery into the fraudulent joinder issue."[80] A "district court may 'pierce the pleadings' and consider summary judgment-type evidence in the record, [while taking] into account all unchallenged factual allegations, including those alleged in the complaint. . . ." *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004). District courts have approved such discovery (including depositions) in cases involving improper joinder

---

[76] *See e.g. Kling*, 575 F.3d at 517; *Hernandez*; 2015 WL 9921067 at *2; *Bernard*, 154 So. 3d at 1248; note 71, *supra*.

[77] *Renfroe*, 809 So. 2d 947, 953; *Marin*, 48 So. 3d at 245.

[78] *Terrebonne Par. Sch. Bd.*, 290 F.3d at 320 n.61.

[79] *Firefighters' Ret. Sys. v. Royal Bank of Scotland PLC*, 2016 WL 1254366, *8 (M.D. La. Mar. 29, 2016) (citing *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2009)).

[80] *Garcia v. LG Elecs. USA Inc.*, 2011 WL 2517141, at *7 (S.D. Tex. June 23, 2011).

challenges predicated on prescription. *Walker v. Philip Morris, Inc.*, 2003 WL 21914056, *2-3 (E.D. La. Aug. 8, 2003); *Scott v. R.J. Reynolds Tobacco Co.*, 2001 WL 797992, *2-6 (E.D. La. July 12, 2001).

Defendants note that the Petition evidences encyclopedic knowledge of the history of the former railyard,[81] knowledge of what occurred at the ConCo Site as opposed to other parts of the Facility,[82] the geography and geology of the areas surrounding the ConCo Site,[83] the specific classification of the alleged contamination,[84] the regulatory responses to contamination,[85] the relative success of those regulatory responses,[86] prior litigation,[87] and the transfer of tracts between some of the defendants.[88]  Further, Plaintiffs' property is in close proximity to the ConCo Site,[89] which is allegedly located in the "heart of historic downtown Lafayette."[90]  So it strains credulity to believe that Plaintiffs—in light of all of all available information and despite their characterization of the "long known"[91] and "[d]ocumented"[92] issues on the ConCo Site— will satisfy their burden.

## C.    Plaintiffs Have No Cause of Action for Unjust Enrichment

Plaintiffs' Petition asserts numerous claims against Defendants including, but not limited to, delictual causes of action for trespass and other general torts under Article 2315. Petition, ¶¶ 53-88. Where a plaintiff pleads "a delictual action, he [is] precluded from seeking recovery under

---

[81] Petition, ¶ 18.
[82] *Id.* at ¶ 20.
[83] *Id.* at ¶¶ 30, 33
[84] *Id.* at ¶ 28.
[85] *Id.* at ¶¶ 20, 28, 34, 35, 37, 46.
[86] *See e.g. id.* at ¶¶ 17, 20, 49.
[87] *Id.* at ¶ 2, 20.
[88] *Id.* at ¶ 20.
[89] *Id.* at ¶¶ 8, 18.
[90] *Id.* at ¶ 1.
[91] *Id.* at ¶ 1.
[92] *Id.* at ¶ 4.

a theory of unjust enrichment."[93] The Louisiana Supreme Court has ruled that this conclusion holds even where the plaintiff possessed a remedy in tort but that remedy has prescribed.[94] Plaintiffs have not properly alleged that they have no other remedy at law available to them; to the contrary, they itemize seven sources of recovery along with their unjust enrichment claim. These theories of recovery foreclose Plaintiffs' unjust enrichment claim.

D.      **The *Smallwood II* Doctrine Has No Effect on This Case**

The Fifth Circuit's decision in *Smallwood II*[95] does not affect the propriety of Defendants' removal. *Smallwood II* held that "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder . . . ."[96] In *Boone v. Citigroup, Inc.*, 416 F.3d 382, 385 (5th Cir. 2005), a fraudulent joinder case where defendants removed on grounds that plaintiffs' claims against the non-diverse citizens were time-barred, the Fifth Circuit ruled:

> If, but *only* if, the showing which forecloses appellants' claims against the non-diverse defendants *necessarily* and *equally compels* foreclosure of all their claims against all the diverse defendants . . . .

*Boone*, 416 F.3d at 391 (emphasis original). Thus, Plaintiffs must establish that the prescription claim as to ConCo "necessarily" and "equally compels" an identical finding as to Defendants.[97] Plaintiffs cannot make that showing here.

The Petition asserts that ConCo divested its interest in the ConCo Site no later than 2011, and that ConCo sold its interest in the ConCo Site to co-defendant Union Pacific.[98] As a result,

---

[93] *Constance v. Austral Oil Exploration Co., Inc.*, 2013 WL 6578178, *9 (W.D. La. 12/13/13).
[94] *Walters v. MedSouth Record Mgmt., LLC*, 2010-0352 (La. 6/4/10), 38 So. 3d 241
[95] 385 F.3d 568 (5th Cir. 2004) (*en banc*), *cert. denied* 544 U.S. 992 (2005).
[96] *Id.* at 574.
[97] *See also Reese v. ICF Emergency Mgmt. Servs., Inc., L.L.C.*, 684 F.Supp.2d 793, 805 (M.D. La. 2010) (*Smallwood II* only applies if the defense regarding the nondiverse defendant "necessarily and equally compels foreclosure of *all of the plaintiff's claims* against *all of the diverse defendants*.") (emphasis original).

23

Plaintiffs provide an endpoint for ConCo's last conduct that passed more than one year prior to the date Plaintiffs filed suit. This allegation also establishes the last possible time prescription could have commenced against Plaintiffs as to ConCo. *Kling Realty Co. v. Chevron USA, Inc.*, 575 F.3d 510, 518 (5th Cir. 2009); *Bustamento v. Tucker*, 607 So. 2d 532, 542 (La. 1992) (holding that liberative prescription runs from the date of the date of the last harmful act).[99] The Petition does not allege that Union Pacific or Southern Pacific's conduct at the Facility, including conduct on the former ConCo Site, has ceased. The Petition alleges that, as present owners of the Facility, Union Pacific and Southern Pacific remain "neighbors," or adjacent landowners, under Civil Code articles 667-669. The conclusion that Plaintiffs' claims against ConCo—which is alleged to have done no harmful act since 2011 and is no longer a "neighbor" to Plaintiffs—have prescribed does not "necessarily" and "equally compel[]" an identical finding as to Union Pacific or Southern Pacific under the allegations of the Petition, even if that result may later be established through discovery.

### III.    Conclusion

Federal question jurisdiction exists because Plaintiffs pled the elements of an action under 42 U.S.C. § 6972(a)(1)(B), federal law completely preempts this action, and (additionally) because federal law is otherwise intrinsic and central to Plaintiffs' Petition. Moreover, this Court possesses diversity jurisdiction over this case because Plaintiffs have no reasonable possibility of recovery against the sole non-diverse defendant, as Plaintiffs' tort-based claims have prescribed as to the non-diverse defendant and Plaintiffs possess no unjust enrichment claim whatsoever. Thus, Defendants respectfully request that this Court deny Plaintiffs' Motion to Remand or, alternatively, allow discovery on the improper joinder issue.

---

[98] Petition, ¶ 20.
[99] Because there can be no suspension of prescription through the continuing tort doctrine absent continued conduct, that doctrine cannot apply to ConCo. *See e.g. Kling*, 575 F.3d at 518.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY:   /s/ *Steven J. Levine*
       Steven J. Levine, Bar Roll No. 14139
       John B. Shortess, Bar Roll No. 26513
       Benjamin M. Anderson, Bar Roll No. 32319
       II City Plaza | 400 Convention Street, Suite 1100
       Baton Rouge, Louisiana 70802-5618
       Telephone: 225-346-0285
       Telecopier: 225-381-9197
       Email: levines@phelps.com
               john.shortess@phelps.com
               benjamin.anderson@phelps.com

   *-and-*

       Elena Arcos Pecoraro, Bar Roll No. 26787
       Grant F. Freeman, Bar Roll No. 35131
       Anna M. Grand, Bar Roll No. 36474
       Pecoraro Law
       600 Jefferson Street
       Suite 801
       Lafayette, Louisiana 70501
       Telephone: 337-266-2334
       Telecopier: 337-266-2231
       Email: elena@pecorarolaw.com


       ATTORNEYS FOR DEFENDANTS UNION
       PACIFIC RAILROAD COMPANY AND
       SOUTHERN PACIFIC MOTOR TRUCKING
       COMPANY


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Opposition to Motion to Remand has been served on this 4th day of May *via* the Court's CM/ECF system which transmitted a copy to counsel electronically on the same date.

               s/ *Steven J. Levine*

PD.19343629.2