# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

| | |
|---|---|
| **SALVATION ARMY, ET AL** | **CIVIL ACTION NO. 6:16-CV-0347** |
| **VERSUS** | **JUDGE HICKS** |
| **UNION PACIFIC RAILROAD, INC., ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

## REPORT AND RECOMMENDATION

Pending before me for Report and Recommendation is the Motion to Remand filed by plaintiffs, The Salvation Army ("Salvation Army"), Barry J. Salinger ("Salinger"), Cypress Street Properties, LLC ("Cypress"), Edward P. Mouton ("Mouton"), Wayne Gary ("Gary"), Gary's Grocery & Market, Inc. ("Gary's Grocery"), DE & FK LLC ("DE & FK") and Frank's House, LLC ("Frank's House"), filed on April 13, 2016 [rec. doc. 16]. Defendants, Union Pacific Railroad Company ("Union Pacific") and Southern Pacific Motor Trucking Company ("Southern Pacific"), filed opposition on May 4, 2016 [rec. doc. 20]. Defendant, Consolidated Companies, Inc. ("ConCo"), filed opposition on May 4, 2016 [rec. doc. 21]. Plaintiffs filed a reply on May 17, 2016 [rec. doc. 25].

Oral argument was held on May 18, 2016, after which I took the motion under advisement, and granted defendants, Union Pacific and Southern Pacific, leave to file a surreply brief [rec. doc. 26]. On May 20, 2016, defendants filed a Surreply Memorandum [rec. doc. 28].

For the following reasons, I recommend that the Motion to Remand be **DENIED**.

## I. Background

Plaintiffs filed a Petition for Damages in the 15th Judicial District Court, Parish of Lafayette, State of Louisiana, seeking damages, declaratory judgment and injunctive relief under Louisiana law asserting that contaminants from defendants' property migrated onto plaintiffs' land, polluting the Chicot Aquifer, which is the drinking water source for plaintiffs and the City of Lafayette. [Petition for Damages ("Petition"), rec. doc. 1, Exhibit C]. Defendants removed this case on the basis of federal question jurisdiction under 28 U.S.C. § 1331, specifically, the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 9601, *et seq*., and diversity jurisdiction under 28 U.S.C. § 1332.

Plaintiffs own immovable property located in downtown Lafayette, Louisiana.  The Salvation Army, a non-profit corporation with its principal place of business in Georgia, owns two separate tracts.  [First Amended Petition for Damages ("Amended Petition"), rec. doc. 19, ¶ 7].  Sallinger a Louisiana citizen, owns one tract. Id. Cypress, a limited liability company whose members are Louisiana citizens, also owns one tract. Id.

Subsequently, plaintiffs filed a First Amended Petition for Damages, adding Mouton, Gary, Gary's Grocery, DE & FK and Frank's House , who also own land in the downtown Lafayette area. [Amended Petition, ¶ 7].  Mouton, a Louisiana citizen, owns four separate tracts.  Gary, a Louisiana citizen, and Gary's Grocery, a  Louisiana corporation, own the

2

same tract.  DE & FK, a Louisiana limited liability company, owns two tracts. Id. Frank's House, a Louisiana limited liability company, owns one tract. Id.

All of plaintiffs' immovable property is located in an area which is adjacent to an approximate 40-acre area consisting of the former Southern Pacific Company ("Southern Pacific") [Union Pacific's predecessor] and Southern Pacific Transportation Company's railroad yard, and the former ConCo Food Distributors site (collectively, the "Facility"). [Amended Petition, ¶¶ 8, 19].  Operations at the Facility began in the early 1900s and included fueling, monitoring and maintaining train engines and cars.  [Amended Petition, ¶ 19].  In 1964, ConCo bought part of the Facility and installed an underground diesel storage system.  [Amended Petition, ¶¶ 20, 23].

Around the early 1960s, Southern Pacific subdivided and sold off certain parcels of the Facility to other entities.  [Amended Petition, ¶ 21]. ConCo sold its property in 2011. [rec. doc. 21, p. 1, Petition, ¶ 20, Amended Petition, ¶ 20].  At various times throughout the operations at the Facility, the equipment and works at the rail yard included a 35,000-barrel aboveground fuel oil tank; a 30,000-barrel above-ground fuel oil tank, a machine shop and roundhouse; multiple paint houses; multiple oil houses; multiple repair shops storing oil, fuel and dynamite; thousands of feet of railroad tracks, and numerous pipelines, wells and drains. [Amended Petition, ¶ 23].

Beginning in the early 1990s, environmental testing conducted by defendants revealed

contaminated soil and groundwater beneath the Facility.     [Amended Petition, ¶ 25]. Plaintiffs allege that defendants failed to conduct a comprehensive cleanup and implement any protective or remedial measures to prevent migration of these contaminants into the Chicot Aquifer.  [Amended Complaint, ¶¶ 26-28].  They further assert that defendants' operations have impacted and are threatening to further impact plaintiffs' properties and the Chicot Aquifer.  [Amended Petition, ¶¶ 1, 31, 34].

On February 1, 2016, plaintiffs filed a Petition for Damages against Union Pacific, a business corporation organized under the laws of the state of Delaware with its principal place of business in Nebraska; Southern Pacific, a business corporation organized under the laws of California with its principal place of business in Nebraska, and ConCo, a business corporation organized under the laws of the state of Louisiana with its principal place of business in Louisiana.  [Notice of Removal, ¶ 8].   Plaintiffs alleged state law claims under LA. CIV. CODE articles 667-669 (servitude of neighborliness); 2315 (negligence and trespass); 2315.3 (punitive damages); and 2317 and 2322 (strict liability); 2317. 2317.1 and 2322 (strict liability); 2298 (unjust enrichment), and the Louisiana Groundwater Act, LA. REV. STAT. § 30:2015.1.  On March 7, 2016, plaintiffs filed a First Amended Petition for Damages.  [rec. doc. 19, Exhibit A].

On March 14, 2016, defendants removed this case on the basis of federal question jurisdiction under 28 U.S.C. § 1331, specifically, the Resource Conservation and Recovery

Act ("RCRA"), 42 U.S.C. § 9601, *et seq*., and diversity jurisdiction under 28 U.S.C. § 1332. On April 13, 2016, plaintiffs filed a Motion to Remand [rec. doc. 16] on the grounds that the petition asserts only state law causes of action, and that this Court lacks diversity jurisdiction because plaintiffs and ConCo are Louisiana citizens.

Union Pacific filed opposition on the grounds that 42 U.S.C. § 6972 of the RCRA completely preempts plaintiffs' state law claims, and that ConCo was improperly joined to defeat diversity.  ConCo opposes on the grounds that it sold the allegedly contaminated property in 2011, more than four years before this suit was filed; thus, plaintiffs claims against it have prescribed.

## II. Issues and Analysis

### A. Are Plaintiffs' State Law Claims Preempted?

Plaintiffs assert that this case should be remanded under the "well-pleaded complaint rule" because they have asserted only state law causes of action.  Union Pacific and Southern Pacific rely on the "artful pleading doctrine" exception to the well-pleaded complaint rule, arguing that plaintiffs' exclusive remedy is under RCRA, which preempts plaintiffs' state law claims.

Absent diversity of citizenship, only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).  The presence

or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Id.* The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law. *Id.*

The "artful pleading" doctrine is an "independent corollary" to the well-pleaded complaint rule. *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) (*citing Rivet v. Regions Bank*, 522 U.S. 470, 118 S.Ct. 921, 925, 139 L.Ed.2d 912 (1998)). Under this principle, removal is not defeated by a plaintiff's omission to plead necessary federal questions. *Id.* The Fifth Circuit has held that the artful pleading doctrine allows removal *only* where federal law completely preempts a plaintiff's state-law claim. (emphasis in original). *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008); *Memorial Hermann Hosp. Sys. v. Aetna Health Inc.*, 2011 WL 3703770, at *2 (S.D. Tex. Aug. 23, 2011). The Supreme Court has held that complete preemption exists if Congress has clearly manifested an intent to make causes of action within the scope of the statute removable to federal court. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987).

Complete preemption must be distinguished from "defensive preemption" (*i.e.*, "conflict preemption" or "ordinary preemption"). *Elam v. Kan. City S. Ry.*, 635 F.3d 796,

6

803 (5th Cir. 2011).  Defensive preemption does not create federal jurisdiction and simply "declares the primacy of federal law, regardless of the forum or the claim." *Id*.  "As a general matter, complete preemption is less common and more extraordinary than defensive or ordinary preemption." *Id*.  Indeed, complete preemption is a "narrow" exception to the well-pleaded complaint rule.  *Id*.

There is, however, another situation where the artful pleading doctrine applies: "when Congress has . . . expressly provided for the removal of particular actions asserting state law claims in state court." *Roland v. Green*, 675 F.3d 503, 520 (5th Cir. 2012), *aff'd sub nom*. *Chadbourne & Parke LLP v. Troice*, 134 S.Ct. 1058, 188 L.Ed.2d 88 (2014).  Thus, a state claim may be removed to federal court in only two circumstances: (1) when Congress expressly so provides, or (2) when a federal statute wholly displaces the state-law cause of action through complete preemption.  *Preston v. Mossbarger*, 2015 WL 4742549, *3 (N.D. Tex. July 8, 2015) (*citing Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003).

Defendants argue that there is still another avenue for removal based on the artful pleading doctrine: when a federal question, not pleaded in the plaintiff's complaint, is nonetheless both "intrinsic and central" to the plaintiff's cause of action.  *Brumfield v. City of Baker*, 2011 WL 5178267, at *3 (M.D. La. Sept. 30, 2011), *report and recommendation adopted*, 2011 WL 5238720 (M.D. La. Oct. 31, 2011) (*citing Guckin v. Nagle*, 259 F.Supp.2d

406, 410 (E.D. Pa. 2003)). *Brumfield* is only one of two cases, reported or unreported, within the Fifth Circuit adopting the second "intrinsic and central" interpretation of the artful pleading doctrine. *Redus v. Univ. of the Incarnate Word*, 61 F. Supp. 3d 668, 675 n. 3 (W.D. Tex. 2014) (*citing Dardeau v. West Orange-Grove Consol. Indep. Sch. Dist.*, 43 F. Supp. 2d 722, 728 (E.D. Tex. 1999)). Both *Brumfield* and *Dardeau* cite to Wright and Miller's Federal Practice & Procedure as support for the contention. *Id.* Because the Fifth Circuit has not yet adopted such an approach, the Court is limited to the Fifth Circuit definition of the artful pleading doctrine, which applies only when federal law completely preempts state law. *Id.* (*citing Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 783 (5th Cir. 2000)).

Absent the extraordinary circumstances in which the artful pleading doctrine applies, the well-pleaded complaint rule governs, as does its corollary. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995). That is, if a plaintiff indeed has a viable state law claim, he may depend on it alone and thereby defeat attempts at removal. *Id.* (*citing Caterpillar*, 482 U.S. at 391 & n. 7, 107 S.Ct. at 2429 & n. 7) (noting that, because the plaintiff is the "master of the claim," "he or she may avoid federal jurisdiction by exclusive reliance on state law").

Union and Pacific and Southern Pacific argue that a federal question exists because plaintiffs pled the elements of a cause of action under 42 U.S.C. § 6972(a)(1)(B) (an imminent and substantial endangerment or "ISE action"). Thus, they assert, federal law

completely preempts this action.  [rec. doc. 20, p. 2].

The citizen suit provision of RCRA, 42 U.S.C. § 6972(a)(1)(B), provides:

[A]ny person may commence a civil action on his own behalf . . . against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any *solid or hazardous waste* which may present an *imminent and substantial endangerment* to health or the environment.

(emphasis added).

Defendants argue that plaintiffs' petition asserts an ISE action under RCRA.  The

pertinent allegations are as follows:

3.

Soil and shallow groundwater testing on file with the Louisiana Department of Environmental Quality ("LDEQ") confirms the presence of a toxic slew of *"Superfund" hazardous substances* perilously perched atop the Chicot Aquifer. Yet diligent review of available LDEQ records reveals that no testing in the Chicot has ever been ordered or performed.

4.

Documented contamination at the Facility constitutes an *illegal, imminent, and substantial endangerment* to Plaintiffs' and the entire Lafayette community's health and safety.

(emphasis added).

Defendants contend that Congress' intent to completely preempt state law causes of

action through RCRA's citizen suit provision is expressed in 42 U.S.C. § 6972(a), which

provides:

9

"Any action under paragraph (a)(1) of this subsection shall be brought in the *district court* for the district in which the alleged violation occurred or the alleged endangerment may occur. . . . The *district court shall have jurisdiction*, without regard to the amount in controversy or the citizenship of the parties."

(emphasis added).

Additionally, defendants rely on *Taylor*, *supra*, and *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), to support their argument that plaintiffs' claims are completely preempted by RCRA.  Both *Taylor* and *Davila* involve ERISA, which courts have held completely preempts any state law claims which fall within its enforcement provisions.[1]  While defendants cite other types of cases in which courts have found preemption in other statutes, defendants have not cited any cases where RCRA was found to completely preempt state law claims.[2]  [rec. doc. 28, n. 2].

In the reply brief, plaintiffs' rely on this Court's ruling in *Hussey v. Total Envtl. Solutions, Inc.*, 2015 WL 7282073 (W.D. La. Nov. 16, 2015), to support their argument that

---

[1] *Lone Star OB/GYN Associates v. Aetna Health Inc.*, 579 F.3d 525, 529 (5th Cir. 2009) (*citing Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) ("In enacting ERISA, Congress created a comprehensive civil-enforcement scheme for employee welfare benefit plans that completely preempts any state-law cause of action that 'duplicates, supplements, or supplants' an ERISA remedy.")).

[2] *GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 706 (5th Cir. 2012) (Copyright Act); *Elam, supra* (Interstate Commerce Commission Termination Act); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 771 (5th Cir. 2003) (the "Carmack Amendment" to the Interstate Commerce Act); *Johnson v. Southern Farm Bureau Life Ins.*, 213 F.3d 635 (5th Cir. 2000) (Section 7422(a) of the Internal Revenue Code); *Rosenbrock v. Deutsche Lufthansa, A.G., Inc.*, 2016 WL 2756589 (S.D. Tex. May 9, 2016) (Montreal Convention); *Brown v. Crop Hail Mgmt., Inc.*, 813 F.Supp. 519, 525 (S.D. Tex. 1993) (Federal Crop Insurance Act);  *ABA Int'l v. Citicorp USA*, 1988 WL 30637, at *1 (S.D. Tex. Mar. 25, 1988) (statute involving transactions between U.S. corporation and foreign bank).

10

the petition does not state a claim under RCRA's citizen suit provision.  In *Hussey*, the Court found that plaintiffs' complaint did not arise under federal law where it made "no mention of a citizens' suit" under either the Safe Water Drinking Act ("SWDA") or the Clean Water Act ("CWA"), and there was no "evidence that Plaintiff ha[d] timely performed the jurisprudential statutory notice provisions" for those statutes.  *Id*. at *3.

As in the case of the SWDA and CWA, the RCRA contains a notice requirement.  To state a claim under RCRA's citizen suit provision, a plaintiff must satisfy the notice and 90-day delay requirements of 42 U.S.C. § 6972(b)(2).[3]  *Hallstrom v. Tillamook City*, 493 U.S. 20, 31, 110 S.Ct. 304, 311, 107 L.Ed.2d 237 (1989) (notice and delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision); *Turner v. Murphy Oil USA, Inc.*, 2005 U.S. Dist. LEXIS 45123, at *18 (E.D. La. Dec. 22, 2005) ("Plaintiffs have not alleged that they have complied with the statute's notice requirements, and those requirements are a "mandatory condition[] precedent" to bringing a RCRA claim.").

In a case which specifically addressed RCRA's citizen suit provision, *McCastle v. Rollins Environmental Services*, 514 F. Supp. 936, 939 (M.D. La. 1981), plaintiffs brought

---

[3]Section 6972(2)(b)(2)(A) provides: "No action may be commenced under subsection (a)(1)(B) of this section prior to ninety days after the plaintiff has given notice of the endangerment to – (i) the Administrator; (ii) the State in which the alleged endangerment may occur; (iii) any person alleged to have contributed or to be contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in subsection (a)(1)(B) of this section, except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of subchapter III of this chapter."

a class action in state court alleging that defendant Rollins' hazardous waste disposal facility had released toxic fumes into the atmosphere, causing damages.  Rollins removed the case, arguing that plaintiffs, perhaps unintentionally, had alleged a cause of action under the RCRA because the "stinking, obnoxious, nauseating, repugnant, burning chemical fumes and odors" plaintiffs described would violate federal standards.  The Court disagreed, finding as follows:

> Section 6972(c), as amended in 1978, provides, however, that no action may be commenced under the Act until after plaintiff has given notice to the administrator of the Environmental Protection Agency ["EPA"].  Notice of this sort has been held to be jurisdictional and no action may be instituted in its absence.  *See National Sea Clammers Association v. City of New York*, 616 F.2d 1222 (3rd Cir. 1980), *cert. granted*, 449 U.S. 917, 101 S. Ct. 314, 66 L. Ed. 2d 145 (1981), dealing with a similar notice provision under the Federal Water Pollution Control Act.
>
> It is undisputed that plaintiffs have given *no notice* of this action and *none is alleged in the petition*.  Under these circumstances, it is clear that plaintiffs have not brought and could not have brought this action under 42 U.S.C. § 6972(a).

(emphasis added).  *Id*. at 939.

Here, defendants point out that plaintiffs admitted that they had sent notice under the Louisiana Environmental Quality Act and RCRA.  [rec. doc. 28, p. 2].  Plaintiffs, however, elected not to amend the suit to add an RCRA claim.  [rec. doc. 25, p. 2, n. 4].  This makes the instant case distinguishable from *Hussey*, where there was not evidence that plaintiff

timely performed the jurisprudential the statutory notice requirements.[4]

In *McCastle*, however, the Court, on reconsideration, clarified that the absence of notice was not the *sole* factor in determining that the action was not brought under the RCRA. (emphasis added). *Id.,* 514 F.Supp. at 942. The Court noted that, for example, no violation of any federally authorized permit, standard, regulation, condition, requirement or order was alleged in the petition, and the Court concluded that the action was brought under the provisions of Louisiana's Revised Civil Code.

Additionally, the Court observed that, in considering a motion to remand, it was confined to the allegations of plaintiffs' petition, and could receive no evidence which would expand or modify that pleading. *Id.* (*citing Great Northern Railway Company v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918) (defendant cannot convert an action into a removable one by presenting evidence.)). Accordingly, the Court concluded that it could not receive evidence, and since judicial notice was a form of evidence, it could not could not consider Rollins' claim that the Louisiana Environmental Control Commission received "actual notice" three days after the suit was filed.

---

[4]In the Surreply, defendants contend that the Court's assumption in *Hussey*, that a failure to comply with the notice provisions of an environmental statute was a jurisdictional defect, is contrary to Fifth Circuit precedent and prior decisions of this Court. [rec. doc. 28, n. 3]. *Lockett v. E.P.A.* 319 F.3d 678, 682-83 (5th Cir. 2003) (CWA); *Sierra Club v. Yeutter*, 926 F.2d 429, 437 (5th Cir. 1991) (Endangered Species Act) (a notice requirement in the context of a citizen suit provision, although "clearly mandatory," is "not jurisdictional in the strict sense of the term"); *Payne v. United States*, 2015 U.S. Dist. LEXIS 108158, at *5 (E.D. Tex. Aug. 17, 2015) (CWA); *Atchafalaya Basinkeeper v. Mallard Basin*, 2011 U.S. Dist. LEXIS 36652, at *8 (W.D. La. Feb. 7, 2011) ("the CWA's notice requirement is 'more procedural than jurisdictional.'"). As the instant case is distinguishable from *Hussey*, it is unnecessary to address this argument.

13

In this case, plaintiffs did not allege in their pleadings that they had sent notice under the Louisiana Environmental Quality Act and the RCRA.  Instead, they notified the Court of this fact, for the first time, in their Reply brief.  [rec. doc. 25, p. 2, n. 4].  As indicated in *McCastle*, the Court cannot consider evidence after removal.  *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 592 (5th Cir. 2015) ("Jurisdictional facts are determined at the time of removal, and consequently post-removal events do not affect that properly established jurisdiction.").

Moreover, *McCastle* noted that, as plaintiffs have asserted in this case, the RCRA has a "savings to suitors clause."  This section provides:

> Nothing in this section shall restrict any right which any person (or class of persons) may have *under any statute or common law* to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or to seek any other relief (including relief against the Administrator or a State agency).

(emphasis added).  42 U.S.C. § 6972(f).

In *McCastle*, the Court found that the above-quoted section preserved state law remedies to the plaintiffs.  *See also Boone v. Du Bose*, 718 F. Supp. 479, 484 (M.D. La. 1988) ("it is [] clear that Congress has preserved in this statute the rights of the states to legislate in this area and the rights of individuals to pursue state remedies" under § 6972(f) and other federal environmental statutes).  In upholding its finding that plaintiff's case should be remanded, the *McCastle* Court stated:

14

Where there is a choice between federal and state remedies, then plaintiffs' choice of forum should be recognized upon a motion to remand. *Sanchez v. Trustees of Pension Plan*, 419 F.Supp. 909 (M.D. La. 1976). Plaintiffs here have chosen to bring their action upon the provisions of Louisiana law, and this Court should consider them to be the masters of their own claims. Had plaintiffs brought this action initially in federal court in an attempt to assert a cause of action under the Resource Conservation and Recovery Act, then Rollins' arguments might be entitled to more consideration and the *Susquehanna*[5] and *Friends of the Earth*[6] cases might have some application. Under these circumstances, however, the Court reiterates its prior conclusion that this is a local action involving a local incident and that there is no jurisdiction in this Court.

Here, as in *McCastle*, plaintiffs chose to bring their action asserting solely state law claims. Although they could have brought this action in federal court and asserted a cause of action under the RCRA, they chose not pursue such claim. Under these circumstances, I find that there is no federal question jurisdiction in this Court.

## B. Was ConCo improperly joined?

Next, plaintiffs assert that this Court lacks diversity jurisdiction case under 28 U.S.C. § 1332, as three of the plaintiffs and ConCo are Louisiana citizens. Defendants argue that ConCo was improperly joined because plaintiffs cannot establish a cause of action against it. Specifically, they assert that ConCo sold the allegedly contaminated property in 2011, more than four years prior to the filing of this lawsuit; thus, any tort claims against it have prescribed.

---

[5]*Susquehanna Valley Alliance v. Three Mile Island*, 619 F.2d 231 (3rd Cir. 1980), *cert. den.*, 101 S.Ct. 893 (1981).

[6]*Friends of the Earth v. Carey*, 535 F.2d 165 (2nd Cr. 1976), *cert. den.*, 98 S.Ct. 296 ((179).

The Fifth Circuit has recognized two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

Defendants have asserted improper joinder under the second prong. The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. *Id.* To answer this question, the court may either: (1) conduct a Rule 12(b)(6)-type analysis or (2) in rare cases, make a summary inquiry to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the instate defendant. *Id.* at 573; *Buettner v. USA Gymnastics*, 2016 WL 2918107, at *2 (N.D. Tex. May 18, 2016).

A court may choose to use either one of these two analyses, but it must use one and only one of them, not neither or both. *International Energy Ventures Management, L.L.C. v. United Energy Group, Ltd.*, 818 F.3d. 193, 207 (5th Cir. Mar. 31, 2016). The decision to pierce the pleadings "lie[s] within the discretion of the trial court." *Smallwood*, 385 F.3d at 573. The undersigned finds that this is not case where the facts are "discrete and undisputed;" accordingly, the Court will conduct a Rule 12(b)(6)-type analysis.

The Fifth Circuit has recently held that federal courts should use the federal pleading standard when conducting the Rule 12(b)(6)-type analysis of an improper joinder claim in a motion to remand to determine if the plaintiff has stated a claim against a nondiverse defendant. *International Energy Ventures Management*, 818 F.3d at 208.  Thus, the Court must measure plaintiffs' claims against defendants under that standard to determine whether ConCo was properly joined.  *Id.* at * 8.  Specifically, the Court must consider whether plaintiffs pleaded "enough facts to state a claim to relief that is plausible on its face."  *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

Defendants argue that because plaintiffs' claims against ConCo have prescribed, there is no possibility of recovery against ConCo.  They assert that ConCo sold the allegedly contaminated property in 2011, which is four years prior to the time that plaintiffs filed this action.

The applicable prescriptive period is found in LA. CIV. CODE art. 3493, which provides as follows:

> When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable *acquired, or should have acquired,* knowledge of the damage.

(emphasis added).  LA. CIV. CODE art. 3493

Plaintiffs allege that ConCo sold the property at issue at the end of its litigation with

Union Pacific in 2011 [Petition, ¶ 20, Amended Petition ¶ 20]; thus, defendants assert that, on the face of the petition, plaintiffs' claims against ConCo have prescribed.  Once it is shown that more than a year has elapsed between the time of the actionable conduct and the filing of suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, using an exception such as *contra non valentem*.  *Hernandez v. Smith*, 2015 WL 9921067, at *2 (W.D. La. Sept. 28, 2015), *report and recommendation adopted*, 2016 WL 356044 (W.D. La. Jan. 27, 2016) (*citing Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002)).

Here, plaintiffs, Salvation Army, Sallinger and Cypress, allege that they "first learned of the possibility of contamination and the factual basis supporting the claims made herein less than two months before the date of the filing of the original Petition for Damages after meeting with counsel and being advised for the first time of the possibility of the complained environmental damage." [Amended Petition, ¶ 9].  Mouton, Gary, Gary's Market, DE & FK and Frank's House, allege that they first learned about their potential claim "less than two months before the filing of this Amended Petition for Damages." [*Id*.].  However, plaintiffs have not addressed the issue of when they *should have known* about their alleged causes of action prior to the expiration of the prescriptive period.

In the petition, plaintiffs assert that an "Environmental Impact Statement, *two prior lawsuits*, piecemeal testing, and decades of environmental regulatory agency 'oversight'"

18

have resulted from the alleged contamination of the 40-acre former rail yard operations area. [Amended Petition, ¶ 2].  (emphasis added).  ConCo has attached pleadings from two lawsuits – one filed in state court and one in this Court – for environmental damages allegedly resulting from operations at the same Facility.  [rec. doc. 21, Exhibits A, B].[7]

In 2003, neighboring Lafayette property owners filed a Petition for Damages against these same defendants (along with Georgia-Pacific Corporation) in the matter entitled *JoAnn Gant Johnson and Annette B. Lewis v. Georgia Pacific Corporation, et al*, Docket No. 2003-5863, 15th Judicial District Court, Parish of Lafayette, State of Louisiana (the "*Johnson* suit"), alleging that their land was contaminated by operations at the Facility.  [rec. doc. 21, Exhibit A].  The *Johnson* plaintiffs also sought to intervene in a federal suit entitled *Consolidated Companies, Inc. v. Union Pacific Railroad Company, et al*, Docket No. 98-1804, (W.D. La. 2003), in which ConCo sought damages for the same contamination alleged here.  [Docket No. 98-1804, rec. doc. 139].[8]

In most cases, to determine whether the plaintiff has any possibility of recovery against the non-diverse defendant, the court should conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.  *Flagg v. Stryker Corporation*, 819

---

[7]The court may take judicial notice of court pleadings in other cases.  *Murchison Capital Partners, L.P. v. Nuance Comminucations, Inc.*, 625 F. App'x. 617, 618 (5th Cir. 2015) (*citing Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)).

[8]Docket No. 98-1804 was dismissed with prejudice on May 15, 2009.  [Docket No. 154].

F.3d 132, 136 (5th Cir. 2016) (*citing Smallwood*, 385 F.3d at 573).  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.  *Id*.

Here, however, plaintiffs' *own petition* states that at least two prior lawsuits have been filed for environmental damage resulting from the Facility's operations.  (emphasis added).  The allegations in the petition and the attachments suggest that plaintiffs certainly should have known about the possibility of a cause of action against these defendants, particularly because the same land was involved in at least two lawsuits which were contained in the public record.  Thus, the plaintiffs have failed to demonstrate that an exception to prescription applies in this case and that their claims against ConCo are viable.

For these reasons, I find that plaintiffs have no possibility of recovery against ConCo because the claims against it have prescribed.  Accordingly, I find that ConCo was improperly joined and should be dismissed from this lawsuit.

### III. Conclusion

Based on the foregoing reasons, I recommend that the Motion to Remand [rec. doc. 16] be **DENIED**, and the claims against ConCo be **DISMISSED.**[9]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and

---

[9] When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without prejudice.  *Giles v. Wal-Mart, LLC,* 2016 WL 2825778, at *6 (E.D. La. May 13, 2016), *citing Int'l Energy Ventures Mgmt.,* 818 F.3d 193, 209 (5th Cir. 2016).

Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed this 23rd day of June, 2016, at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

21